The next case on calendar for argument is Oertwich v. Traditional Village of Togiak. Counsel for Appellant, please proceed. Thank you, Your Honors. May it please the Court, David Tennant on behalf of Appellant Ronald Oertwich. I'd like to begin with the pending motion for full remand. That motion goes to significant records that were produced for the first time on appeal by the defendants, the appellees, and they go to the significant issues about whether the actions taken by the tribe were under color of state law, which would support Section 1983 liability, and also make out as a matter of factual merit that the tribal police officers violated Mr. Oertwich's civil rights by seizing a tote bag, opening the tote bag, and then two days later getting a search and seizure warrant followed up seven days later by another warrant. If we can resolve the issues without referring to the additional materials, is there any reason to remand? I'm sorry, Your Honor, what was the question? If we can resolve the issues without referring to the materials submitted that you're objecting to, is there any reason to remand? Well, from Appellant's perspective, the additional records that have been submitted on appeal do raise, you know, it's kind of a mixed bag. I suppose that the court certainly has within its powers the ability to recognize that the submitted materials do support a 1983 action. But how would they address tribal sovereign immunity? That seems to be the main issue here. And even if we accepted that new evidence, wouldn't the tribes still be entitled to sovereign immunity? Well, Your Honor, pointing to the Maxwell versus County of San Diego case cited in our brief, and Section 1983 liability persists, notwithstanding a tribe's claim to have sovereign immunity from suit. In that case, this court held that the actions taken by an ambulance crew dispatched by a tribe in Southern California that constituted grossly negligent actions outside of Indian country supported a claim for tort liability under Section 1983 that the claims were directed at the individual ambulance attendants who stood by and did nothing as a woman who was shot by her husband passed away. So that's kind of the point that I was curious about in terms of the district court's resolution of this case. It was difficult to see how the district court analyzed the tribal immunity versus the immunity of the individual participants. What's your view of that? Well, our view is that the district court basically didn't apply the rule of Maxwell and didn't understand that there could be a viable Section 1983 claim here. Wait, against whom? You're doing the same thing. So as to the tribe, are you contesting that the tribe is entitled to sovereign immunity? Well, with respect to the Section 1983 claim, yes. But not with respect to the other claims that would be governed by common law, not as a matter of statutory law. Okay, so now could you circle back to Judge Rollenton's question, please? I'm trying to figure out what your position is vis-a-vis the individual defendants acting in their official capacity. Yes. Do you think those claims were dismissed by the district court? Yes. On page 15, perhaps? Yes. In the same sentence, the district court said that the claims against Togiak and the individuals in their official capacity are dismissed on the basis of sovereign immunity, if I'm reading the order correctly. Is that right? I believe that's correct, Your Honor. Okay. Well, maybe you can answer this. What claims – where do you specify that there are claims against the individual for prospective injunctive relief? I think that's the issue that might – In their official capacity. In their official – Is there an amendment to the question? Yeah. Well, you know, again, if you recall, this is a pre-answer motion to dismiss under 12b-1 and 12b-2. You're aware of that, counsel, but did you make the argument? This isn't – Judge Nelson's question is very focused and really important. Did you make the argument? Under count one, there is a request for prospective injunctive relief, but I don't believe – And what does that injunctive relief look like? Against whom? I don't believe it is – I have to look at the complaint to be sure as to whether it's covering all defendants. And, again, all defendants, to the extent there were individuals, were sued both in their individual capacity as well as their official capacity. So – Well, okay, but once the motion was filed, you're kind of expecting the district court to be a mind reader, it seems to me. Because even after the fact, I'm really struggling to see where there was a claim made. And it's one thing to say that it's in there in the complaint, but in response to the motion, did you argue that there should be an ability to seek prospective injunctive relief against the individual defendants acting in their official capacities? I don't know if that specific argument was made in the district court. Exactly. Go ahead. Please. What about – I'm sorry. Go ahead. I'll be quick. Was there – but we're very polite. Yes. Was there a request to amend? Did you leave to amend? No, plaintiff did not seek that relief. Okay. I was going to ask you, what about the volunteers who assisted? How do you analyze their potential liability in terms of the tribal sovereign immunity? Yes, Your Honor. There are four individuals who essentially were rounded up as a posse and engaged in physical force against Mr. Ortwich. Those four volunteers have no protection under the established body of tribal sovereign immunity from suit. They are not acting in any capacity that is recognized in the law. And we have cited cases for the proposition that, generally speaking, with respect to sovereign immunity from suit, no matter who the sovereign is, that volunteers do not benefit from the protections that are afforded to the sovereign and people who are acting in the sovereign's interest. So they are basically unprotected in the body of sovereign immunity from suit. This case was a little bit confusing for me factually because it was unclear what authority, if any, the tribe had to enforce the law and banish people in the city of Togiak. Could you enlighten us on that, please? Yes, Your Honor. The city of Togiak is a second-class city under Alaska law. And because of the status as a municipality that is funded by the state, it is not lands over which any tribal sovereign authority persists. And the Alaska Native Claims Settlement Act and the Supreme Court's decision in Venati made clear that the Togiak tribe here has no tribal territorial authority, none whatsoever, and certainly cannot be exercising it over the municipal airport and land. Can I ask a question about that? Is your position, then, that the tribal court, it's unconstitutional in every aspect? I mean, that seems to be what you just said. Yes, Your Honor. That is our position, that under Oliphant, the clear prohibition against tribal courts exercising criminal jurisdiction over non-Indians has particular force in Alaska. Well, hold on. Hold on. Back up. Back up. Is your position that the tribal court should not exist at all? Or is your position that the order, that they do have some jurisdiction, but the order here went beyond the jurisdiction that they have? They have, Your Honor, our position is they have no territorial jurisdiction. They remain sovereign with respect to their own membership and their own internal governance. Right. So, counsel, the first order, so that's why it's important if we could just, in response to Judge Nelson's question, the first order permanently banished your client from the community. It's not a geographic restriction. I don't read the first order to make a geographic restriction. I have a question for opposing counsel about the second order because it finds him guilty of trespassing. That seems to be a different problem. But as to this first order, could you speak to that? Right. Is your answer to Judge Nelson's question that they didn't have the ability to banish him from the tribal community? They have no ability to banish Mr. Ortwich from his home, his residence, city lands. They have no ability to effect a banishment order from the community that has punitive criminal aspects and certainly not doing it through violations of his civil rights and, in fact, bringing criminal prosecution against him. Okay, wait a minute. You've packed a lot in there. Their position is going to be, as you know, that they referred criminal charges for bootlegging to the state troopers, and the state troopers, of course, subsequently decided not to prosecute. Their position is not that this was a criminal prosecution, I don't believe. What is your response to that? Well, again, Mr. Ortwich was detained, imprisoned, and subjected to tribal court proceedings that allege possession of illegal substance, importation of illegal substance. We're really familiar with the facts. I don't want to cut you off, but time is short and we're very familiar with the facts. We've paid a lot of attention to this case. And it's not a trick question. I'm just trying to figure out, from those facts, is it your position that this is necessarily a criminal proceeding? Yes. From our position, there's no way that this can fairly be characterized as anything other than the exercise of criminal law. So you would agree that the tribe has civil authority over nonmembers then? So if they had just, for example, imposed a fine and said, you're fined $100 and it wouldn't have been criminal, you would agree that the tribe had authority to do that then? I don't want to parse things out too finely here, but if certainly Mr. Ortwich had engaged in a consensual relationship with the tribe, whether by contract, license, or some other means, he would be subjecting himself to the tribe's tribal court civil jurisdiction to the extent. So your position is, even because he didn't do that, I assume is your position, that the tribal court lacked all authority over him at all? That's correct, that the tribe lacked authority over the body of Mr. Ortwich as he is on fee lands, city municipal lands, and is otherwise subject to state prosecution. And the right result here would have been for the tribe to actually wait for the state troopers to arrive, to report what they believed was an offense, and had they not already violated Mr. Ortwich's rights, the state troopers might have been persuaded to actually go forward with the arrest and referral to the state prosecutors for prosecution. That didn't happen, and the self-help that essentially the Togiak tribe engaged in is without a foundation in the law and is completely barred by Oliphant as the seminal case. If it's a criminal proceeding, right. So could I ask you to follow up and just clarify your comment about this being his home? I'm trying to figure out whether he was dispossessed from real property because I can only find in the record an indication that he was managing a hotel, so I don't know if he owned real estate there. My understanding is it was renting the property, but it's, again, property that isn't under the territorial sovereignty of the tribes. Sure, I just wanted to know whether or not he's been banished from a place where he owns real estate, and it sounds like that's not quite the situation, rather that he rented his own home there, or wherever he was living it was a rented place, is that right? That's my understanding, and it was his home for 30 years, and as we all know, renters can be long-term and have a real foundation in the community. I didn't mean to suggest otherwise. My question was pretty limited. I appreciate the clarification. Thank you. All right, counsel, you exceeded your time. We'll give you a couple of minutes for rebuttal, but we'll hear from Apolline. Counsel? Thank you, Your Honor. May it please the court, Whitney Leonard on behalf of the traditional village of Toviak and the other tribal defendants. I want to address a number of points raised by opposing counsel and by the court, and I'll take them in turn. First, with respect to the Section 1983 claim, it is not true that a 1983 claim can go forward against a tribe. This court specifically held that in Evans v. McKay. And with respect to the Maxwell v. San Diego case that opposing counsel has cited, that case really dealt with the question not of whether sovereign immunity was abrogated or didn't apply in some way, but whether this was an individual capacity claim. And in that case, much like in Lewis v. Clark, we're dealing with what was essentially a mistake or an error of judgment made by a tribal employee while they happened to be on the job. Here, Mr. Ortwick is challenging not the way in which the tribal employees exercise their duties, but whether they had any authority to exercise those duties at all. So those are really... Are you saying that there is no potential 1983 liability against individuals acting in official capacity on behalf of the tribe? That's correct. There can be no Section 1983 liability against individuals acting on behalf of the tribe? My... not in their official capacity. Okay, so not even prospective relief? Well, that wouldn't be a 1983 claim per se. I acknowledge, and this Court's precedent has acknowledged an ex parte young type claim for prospective injunctive relief, but it has to be a claim... So what is your position then on why this doesn't fall within that exception? Because it seems like if he had... let me just take a step back. What is an individual to do if a tribal court issues an order against them and kicks them out of an area or takes away their civil liberties at some point? Certainly, they must be able to challenge that in some way if they have no authority. I understand they can't go against the tribe, but why couldn't they seek prospective injunctive relief against the individuals acting in their official capacity to say you can't enforce that because it's an ultraviolous order? And would you agree that that claim could go forward? I agree that it could, and we discussed that here. And why hasn't he pled that here then? Yeah, so I think it's helpful to look at the complaint. It's on ER... Count 1 is on ER 53. And if you look at the language of the allegations in Count 1, Mr. Ortwick states that the TVT, that's the traditional village of Togiak, is a domestic dependent nation, does not possess any legal authority other than that provided by Congress. The arrest, detention, and banishment were beyond any legal authority given to the TVT by Congress. These ultraviarious acts by the TVT subject it to declaratory and injunctive relief. That's a claim against the tribe. And so Mr. Ortwick hasn't pled an Ex parte Young claim here. Well, why wouldn't it be appropriate for us to remand for him to be given leave to amend, to assert that claim? Why wouldn't that be appropriate? Well, for one thing, Mr. Ortwick never sought leave to amend in the district court. He had an opportunity to plead his claims. And also looking at the context of the case as a whole, Mr. Ortwick sued a number of defendants. He sued also the state, the state's village public safety officer, the city, the mayor. And he chose which claims to plead against which defendants. In the claims against the tribe, he very specifically chose to challenge the assertion of the tribe's authority over him in particular ways. And he doesn't get a second bite at the apple just because his first strategy. Generally, our case law says that leave to amend should be liberally given, even if the party doesn't ask for it. So what do you do with that precedent? Well, in this instance, I think it would be extremely prejudicial to the tribe, particularly in the context where a suit against the tribe is barred by sovereign immunity in recognition of the fact that sovereign immunity protects a sovereign, not just against judgment or liability, but against the burdens of litigation. It would be extremely... Your brief cites the salt river for us. And so I find this position confusing. Your brief tells me at page 40 that the district court ruled there were no claims for injunctive relief brought against individuals in their official capacity. But I don't see that the district court made that ruling. You cite to page 1516 of the court's order. And it seems to me there the district court dismissed all the claims against Togiak under sovereign immunity and the claims against individuals in their official capacities as barred by sovereign immunity. And so if that's what the court did, and I think the district court unambiguously made that order, I've got the question Judge Rawlinson has. Because you cite, essentially cite Ex parte Young by citing Salt River and arguing in your brief that Mr. Ortwig had a path that he could have followed. So I'm at a loss here about why we say that amendment would have been futile, at least as to the sliver of a claim. Well, as to this sliver of a claim, I guess I wouldn't argue necessarily futility, but that amendment here would be extremely prejudicial to the tribe. And I think... But it's not against the tribe, it's against tribal officials. Well, and it would be prejudicial to those officials as well. I think particularly here where we have, again, Mr. Ortwig had an opportunity to plead his claims and made a strategic decision. But here's the problem, counsel. He has, he's very clearly described what relief he wants. He may have not done it procedurally correctly up front. But there's not any doubt in anyone's mind that he's saying that this is, the tribe had no authority to issue this. And if it's a technicality, why don't we give him a chance to amend his complaint and plead it correctly and let it go forward? I would agree with you that there's prejudice if this came out of left field, but there's no surprise here at all. Right, and I think, I wouldn't call it a technicality. I think Mr. Ortwig made a strategic choice about how to plead his claims. I would also note that, as the court asked earlier, the tribe was acting within its authority here. Well, then that may be. I'm just saying that that's his claim. There's no surprise here. Let me back up. We have case law that says we normally don't even exercise jurisdiction over a case until there's been exhaustion through the tribal courts. Right. That didn't happen here. Now, whether there was an exception to exhaustion, it's accurate that the district court never grappled with the exhaustion requirements, right? Correct, and thank you for raising that. If, even if this court were to remand on this very limited issue of prospective injunctive relief. Well, I actually, before you get there, what can we do? Are we, because there was no exhaustion and no determination of exhaustion, can we still address the tribal immunity claims, or are we prohibited from doing that before we address the exhaustion requirement? No, you can, this court can certainly address the immunity claims. The case law is clear that immunity bars suit at the outset. So, it's only if we had to get into the merits. We could not get into the merits without first addressing exhaustion. Correct, because the merits address the question of whether the tribe was acting within its jurisdiction. And that's the question that needs to be exhausted in the tribal court. Counsel, will you answer the question about the volunteers who were not tribal officials and what immunity, if any, they would have? Certainly. So, the first point I would just clarify, my opponent stated that there are four volunteers, but in fact, there were only two. Of the names that he mentions in his reply, two of those are, well, one, Mr. William E. Chuck, is stated in Mr. Orwick's opening brief that he is not party to this appeal. That's in the opening brief at page 13-9. And then Jimmy Kupchayak was a tribal council member. He was a tribal council president. That's stated at ER 48 in the complaint itself. So, there were only two volunteers that we're addressing. Well, regardless of the number, the ones who were admittedly not tribal officials, how are they entitled to immunity? Right. Well, first of all, Mr. Orwick waived any objection to the application of sovereign immunity or the personal immunity doctrines to the volunteers by failing to contest it in the district court. In addition, we've cited the Alaska statute in the brief that protects individuals, requires individuals to assist a peace officer and protects them from civil liability for doing so. So, either of those... Not under tort liability, though. You would agree that there are tort claims against these individuals, but the district court dismissed them for lack of... It did not exercise supplemental jurisdiction over those. Correct. Is there 1983 action against a non-governmental official acting at the behest of a government order? No, and certainly not here where Mr. Orwick admits that he hasn't pled any action taken under color of state law. Again, he made a strategic choice to challenge the assertion of tribal law over him. He pled section 1983 claims against some of the other defendants. There's a section 1983 claim currently pending against... But your position seems to be that the 1983 action under any theory could not go forward against these volunteers because they weren't acting under state law. So, the only claims that would be available against those individuals are the state law claims, which are still apparently viable in state court at this point. Excuse me. Yes. Yes, tribal courts. In tribal court. Counsel, why were they not acting under color of state law? With respect to the volunteers, Your Honor? Correct. For purposes of section 1983. Right. So, all of the tribal defendants here, including the volunteers, were acting under the tribe's inherent authority to protect the tribal community, to protect the health and welfare of the tribe's members. And that's not action taken under color of state law for purposes of a 1983 claim. The Supreme Court and as well as the Alaska Supreme Court have recognized a tribe's inherent authority flowing from its authority over its members and the membership community. The tribes have inherent authority to protect the health and welfare of their members. And that extends to jurisdiction over non-members when their conduct... Did the district court conduct that analysis vis-à-vis the volunteers? The district court did not specifically address the volunteers separately. And the reason is because Mr. Artwick didn't present any objections to the application of either sovereign immunity or the personal immunity doctrines to the volunteers. Am I right? The district court, I think, indicated that the tribe's position in the district court level is that all of the actions against the individuals were taken in their official capacities. Is that right? That's correct. Okay. Including the volunteers, they were taken in their official capacities as what? Tribal? As essentially volunteer employees for the tribe. So, are you treating them as though they have been deputized? That they were directed to help? Is that the idea? Essentially, yes. Oh, well then you could have a 1983 action against them. I thought your position was they were private individuals, and so you couldn't have a 1983 action. I'm hearing different now. You can't have the immunity without the official capacity. That's the difficulty. You're trying to say that they have immunity. If they have immunity, they were acting as agents for the tribe. Right? Right. And I think that would be our position. There's no Section 1983 claim against them because, again, there wasn't action taken under that. So effectively, they just fall within the same thing as any other governmental employee. If we found or gave an opportunity for him to replete claims against the individual defendants in their official capacity, your position would be we could do the same thing for the volunteers as to 1983. Because they were acting at the behest of the government. Perhaps. But I think, again, particularly with respect to the 1983 claim, Mr. Orwick made a choice to challenge the assertion of tribal law over him in the counts he stated against the tribal defendants. No, I understand your position. I'm just trying to sort it out. With respect to the distinction between the volunteers and the other tribal employees, yes. Okay, but they're not even all on appeal. Right? We don't even have all of them. It wasn't even appealed as to each of the volunteers. Correct. It was appealed as to only two of the volunteers, is my understanding. Well, Counsel, I'm a little bit puzzled by how this all works in terms of the detention, the alleged detention, and the alleged physical abuse while in detention. How do those allegations fit into the immunity context? Again, our position is that all of the claims here are truly official capacity claims barred by sovereign immunity. Because when you look to the language of Mr. Orwick's complaint, each of the counts is challenging really the assertion of the tribe's authority over him and not specific actions or the way... But I'm not sure how that's dispositive. Because if you were going to seek a claim... If you do believe that the tribe acted ultra vires here, the only way to challenge that is to seek injunctive relief against the individual actors. Everyone seems to agree, or perhaps maybe not everyone, but that you can't seek a claim against the tribe. So if we took that to its conclusion, your position would be you could never challenge an ultra vires tribal action. And that's not the case. You can by seeking to enjoin the individuals acting in their official capacity from enforcing that order. So that seems to be what's missing here. All right. What about the injuries, physical injuries in the detention and violation of Fourth Amendment rights? So you're saying those just cannot be rectified, that there is no basis for relief for those actions? There's a few questions there. I'll try to tease them apart. I think with respect to the injuries, Mr. Orwick had recourse. First of all, he, as we discussed in our brief, could have filed an FTCA claim, which he chose not to do. So with respect to any tort claims for bodily injury... And it's too late to do that. Those were not correctly exhausted. Correct. They're barred. With respect to his ability to challenge the assertion of the tribe's authority over him, we acknowledge that that can go forward either as an ex parte young claim, which he didn't plead here, or as when Mr. Orwick was detained, he also had available to him under the Indian Civil Rights Act, a habeas claim, which is the remedy that Congress specified for any alleged ICRA violations. And he chose not to avail himself of that remedy either. So he had multiple remedies here that he waived. Does the Indian Civil Rights Act bestow a private right of action? No, not for damages. It's the Santa Clara Pueblo case that very clearly says that. There's no private right of action. That's not viable. No, it's not viable for him. You just mean viable in terms of actually his detention and release behavior? Exactly. There's a habeas claim under the Indian Civil Rights Act. That's Section 1303 of the Indian Civil Rights Act. Right. And he could go forward in tribal court, but on that point, maybe apropos of nothing, but you might be interested to know that our law librarian has been working for a week to try to get access to the code, and we can't find it. I don't know how Mr. Orwick would have been able to find the code. The tribal code, Your Honor? Yes. Well, I know that it's available on request to the tribal court and the tribal administrator.  Would it be available on request to our law librarian? It certainly could be, yes, Your Honor. I'm sure she would appreciate that very much. Absolutely, yes. I'm not trying to give you a hard time, but your brief does argue, of course, that he can go forward in tribal court, and then I go to try to figure out, well, what would his claims be? It's just really difficult. Sure. And again, we've provided excerpts of the tribal code in our statutory addendum, but we would be happy to provide or ask the tribal administrator to provide a full copy of the tribal code for the court. Do you want to respond to the motion to remand because of all the additional materials that were submitted in this case? Yes, Your Honor, and our position is that the motion to remand is not warranted. The materials here that were submitted, first of all, Mr. Orwick had copies. Wait, wait, wait, wait, wait, sorry to interrupt, but it was submitted not to the district court, right? None of them were in front of the district court? Some of them were. Excerpts of them were. So, for instance, both of the tribal court orders were before the district court. And so to the extent that Mr. Orwick relies on the submission of this new material as a basis to remand, kind of suggesting that he didn't know that state law was at play, that's simply not true because in the district court… But the submission in front of our court goes considerably beyond that. It's a lot of material. What's your position about the material that we have that you submitted that was not before the district court, please? Right. Our position is that it's judicially noticeable by this court, but as Your Honor noted earlier, if this court chooses not to rely on it, it doesn't affect the legal arguments here. And it's certainly not a basis for remand. I mean, Mr. Orwick was asking for remand and leave to plead, you know, replead his 1983 claim even in his opening brief. So the addition of the further tribal court material certainly don't justify that remand. Counsel, where in the district court order can we look to find the district court's decision over whether or not the tribe had jurisdiction within the city of Togiak? Where can we find that? The district court didn't need to reach that issue because the official capacity claims were resolved on sovereign immunity grounds. And sovereign immunity, sovereign immunity bars suit in all circumstances, regardless of whether the conduct... But not for the official, not for the individual officials. Sovereign immunity does not bar those claims. So that's why I'm asking you, where in the district court order did the court grapple with the issue that appellant raised regarding the lack of jurisdiction within the city? Would there be, yeah, would there be sovereign immunity for officials even if there was a lack of jurisdiction within the city? Yes, because federal courts as well as the Alaska Supreme Court that has had occasion to address these issues have held that Alaska tribes possess jurisdiction flowing not only from territory for the tribes that do have territory, but also from their jurisdiction over their members. And here where Mr. Orwick's conduct posed a direct threat to the health and safety of their members, the tribe had jurisdiction to act and to protect. That's generally when there is a, there are tribal lands associated with the tribe. So this was kind of a unique situation because it was not a tribal land associated with the infraction. It was the city of Togiak. And it would have been helpful to me if the court had grappled with that issue in terms of does sovereign immunity apply when it's not tribal lands that the officials are regulating, but a municipality separate and apart from the tribe. I found that to be a difficult question and I don't think the district court grappled with that. And I'm not sure what the answer is to that. Right. I would make two points in response. The first is that sovereign immunity clearly applies whether there's tribal land or not. Well, it's not clear because, it may be clear to you, but it's not clear to me. Okay. Well, I would point the court to the Supreme Court's decision in both Kiowa and Bay Mills, which held, and this court's decision in several cases citing the Supreme Court's case law, has held that sovereign immunity applies whether conduct occurs on tribal land or not. I would also direct the court to the case law from the Alaska Supreme Court, which has had occasion to address these issues in the unique Alaska context where tribes don't necessarily have territorial jurisdiction. The most recent case on that is the state versus... But that's for the tribe. That's not for tribal officials. But the tribal officials are acting pursuant to the tribe's authority to protect... I understand your argument. Okay. So the case I would set on that is state versus central council of Tlingit and Haida tribes. And that flows from a line of cases beginning with John V. Baker that recognized this authority for Alaska tribes even though they don't have territory. All right. Thank you, counsel. We've taken you way over your time. Thank you. We'll hear rebuttal. Let's start with two minutes. Thank you. I really appreciate the court's attention, careful reading of the record. And in terms of just a short point on the availability to actually have the opportunity to replead and to address the court's concerns here and to basically have what would be a properly written complaint that has the basis in the record including and most importantly the additional record material that has been non-record material in district court but now made part of the record in this court that details the state action. The tribe was acting under colorist state law and in fact prepared a state law complaint that they sent to the state officials and that this would fill in. The requirement that the district court found lacking about the absence of any action under colorist state law. Excuse me, I thought the VPSO took that step. No, I believe it was the officer in Antelope who actually prepared the information and otherwise was representing. Referred the criminal prosecution to the troopers. Is that right? That's my understanding. Okay, let me just point out that we haven't granted the motion we haven't granted the motion to remand. So those materials are not part of the record of this court. Right. Right, so that's the kind of conundrum in terms of, well, it was a very skinny record obviously put together for purposes of a pre-answer motion to dismiss and then substantial additional materials were presented by the Napolese and this court is now in a position having to determine what do we do with those especially when they actually now clearly make out the kind of 1983 liability that the district court thought was not available to Mr. Orwich. So unless the court has other questions, well, thank you very much for your time. It appears not. So thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Christen, R. Nelson